## J. L. SPARKS V. THE STATE.

No. 17711. Delivered October 30, 1935.
State's Rehearing Granted February 12, 1936.
Appellant's Rehearing Denied June 24, 1936.

The opinion states the case.

*E. V. Hardwick,* of Stamford, and *Stinson, Hair, Brooks & Duke,* of Abilene, for appellant.

*Otis Miller,* District Attorney, of Anson, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of theft over the value of $50.00 and his punishment was assessed at confinement in the state penitentiary for a term of two years.

The only ground upon which appellant relies for a reversal of this case is that the testimony is insufficient to warrant and sustain the conviction.

The record shows that Guy Douthit, who owned and operated a cotton gin at Lueders, in Jones County, had employed T. C. Newcomb to haul cotton seed from a bin at his gin to Stamford, Texas; that on the 21st day of December, 1934, he (Douthit) instructed Newcomb to "clean the bin" before Christmas, as he did not want to carry any of the seed over Christmas. Newcomb and the appellant hauled two loads during the day and loaded the third load after dark, which they hauled to Hamlin and sold it to the Hamlin Cotton Oil Mill for $78.10, under the assumed name of A. L. Simpson.

Mr. Douthit testified that appellant had worked for him off and on for some ten or twelve years but had not hauled any seed for him during the fall of 1934; that he (Douthit)

had employed T. C. Newcomb to haul the seed; that after appellant and Newcomb were arrested at Hamlin, they telephoned for him to come over; that appellant admitted that he took the seed. Douthit further testified:

"What I started to say this morning, when I was asked if the defendant had permission to take that particular load of seed, was this: I did not tell him to take that specific load of seed, but Buck (meaning appellant) had been working for me, as I said, for several years, and anything that he might do— I have told my hands—not him specially—and possibly I told this defendant that anything that he might take around that gin and tell me later—I had confidence in him, I would say—not the other hands—would be all right with me. If he took a load of seed out there, and later on, in thirty or sixty days, had adjusted it with me, that would have been agreeable to me. As to my having no objection to him going there and getting that particular load, I will say if he had settled with me later, it would be all right."

This case seems to have been tried and was submitted by the court to the jury upon the theory that the cotton seed was taken by the appellant and Newcomb without the consent of the owner as in an ordinary case of theft, but the proof shows that the owner had employed Newcomb to haul the seed to Stamford. Appellant was assisting Newcomb in the work with Mr. Douthit's consent and acquiescence. Therefore the court should have drawn his charge in accord with Article 1413, P. C., and the opinions in the case of Guest v. State, 24 Tex. App., 235, and Warren v. State, 106 S. W., 382.

It is obvious that Newcomb was employed by Douthit to haul the seed out of the bin. Therefore Newcomb had the owner's authority to take possession and haul it; and the appellant, who was assisting Newcomb with the owner's consent, also had that authority, if not expressly, then by acquiescence. Therefore, in order to sustain a conviction under the indictment the State was required to prove beyond a reasonable doubt that appellant wrongfully took possession of the seed, because if the accused came into possession of the seed by lawful means, the subsequent appropriation thereof would not be theft. If, however, the original taking was lawful but the accused at the time intended to deprive the owner of the value thereof and to appropriate it to his own use and benefit and did so appropriate it, the offense would be theft under Article 1413, P. C.

In this case, it is not contended that any false pretext was

resorted to by the accused in obtaining possession of the seed. Hence, to convict, it must be shown that the accused, when he took possession of the seed, intended to deprive the owner of the value of the same, the proof of which rested upon the State, and it was incumbent upon the State to establish it beyond a reasonable doubt. Proof of conversion alone is not necessarily sufficient to establish the fact that he (appellant) intended to convert the property at the time he took possession thereof. There must be other proof. See Hernandez v. State, 20 Tex. App., 151; Cox v. State, 28 Tex. App., 92; Stokeley v. State, 24 Tex. App., 509; Lopez v. State, 37 Texas Crim. Rep., 649; Gosler v. State, 56 S. W., 51; Downs v. State, 81 Texas Crim. Rep., 160.

We believe that under the foregoing authorities the appellant's contention must be sustained. We also think that the testimony of Mr. Douthit, the owner of the seed, is so unsatisfactory that we would be unwilling to permit the judgment of conviction to stand. It is therefore ordered that the judgment of the trial court be reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State through the District Attorney of the 40th Judicial District has filed a motion for rehearing insisting that under the record we were in error in reversing the judgment. There was before us at the same time a companion case of the State v. Newcomb. The facts in the two cases as developed on the trials are different, and our conclusion in this case was perhaps influenced by an unconscious confusion of the facts in the other case.

The evidence in the present case reveals the following facts. Guy Douthit was the operator of a gin at Lueders. He had during the ginning season in 1934 been selling his cotton seed at Weatherford and Samford, but had sold none at Hamlin. He had employed T. C. (Cowboy) Newcomb to haul seed for him during the season, and we may infer that Newcomb had authority to load the seed—that is, to take possession of them—for the purpose of hauling them to Weatherford or Stamford, but had no authority to take them for the purpose of hauling them to Hamlin. Newcomb had hauled two loads of seed on the morning of December 21, 1934, and in the afternoon of the same day while he was loading a truck with seed

to haul to Stamford, Douthit told him that he (Douthit) wanted all the seed hauled before Christmas. Douthit had no one other than Newcomb employed to haul seed. If appellant (Sparks) had been helping Newcomb haul the seed this record fails to show it. Appellant had formerly worked for Douthit, but was not working for him at the time mentioned, and had not worked for him during 1934. On the morning of December 22, 1934, at seven o'clock, when parties went to open the oil mill at Hamlin, appellant and another man, who was Newcomb, were waiting near the mill with a truck load of cotton seed. Appellant negotiated a sale of the seed, telling the buyer for the mill that his name was Simpson, and that he was a farmer who lived near Aspermont. Appellant took a check for $78.10 in payment for the seed, the check being made payable to Simpson. Some of the witnesses say that both Newcomb and appellant worked at unloading the seed. Newcomb also told some of the mill employees that he was from Aspermont. Appellant was unsuccessful in his efforts to cash the check and suspicion was aroused. Both he and Newcomb were detained. Appellant phoned to Douthit at Lueders. Douthit testified that when he got to Hamlin appellant admitted that he had gotten the seed from Douthit. In another place in his testimony Douthit said: "Buck Sparks (appellant) admitted to me that he and Cowboy Newcomb had gotten my seed, but Cowboy did not admit it." Douthit expressly denied giving appellant consent to take the specific load of seed in question, but evidently in an effort to aid him, testified that because of his previous employment it would have been all right for appellant to have taken the seed if he had settled for them in thirty or sixty days. However, Douthit did not wait at all to see if appellant would pay for the seed, but took from the Hamlin Oil Mill a check payable to himself for the $78.10. There is nothing in the present record to show whether the truck on which the particular seed were hauled to Hamlin was the same truck which had previously been used by Newcomb in hauling seed from the Douthit gin. Appellant did not testify. We do not learn from any witnesses when this particular load of seed was loaded at the gin, or whether it was day or night. We find no evidence that appellant took the seed or participated in the taking by any supposed general authority which Newcomb may have had. We gain no information from the record in this case as to who may have been the instigator in the taking and selling of the particulr load of seed in question. All we do ascertain is that the seed were in Hamlin

at seven o'clock in the morning, with both Newcomb and appellant present, and that appellant was the active party in selling them under an assumed name. Restricting our examination to facts found in this particular record, we have reached the conclusion that the judgment should not have been reversed for lack of evidence that the seed in question were taken without authority of the owner, and with the then intent to deprive the owner of their value.

The sufficiency of the evidence is the only question presented in this record, and upon further consideration we have concluded that the State's motion for rehearing should be granted, which is accordingly done, and the judgment of reversal is set aside, and the judgment of the trial court is affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant persuasively argues that the case should be reversed because of the testimony of Douthit, the owner of the alleged stolen property, regarding the taking of the property. Appellant insists that Douthit's testimony fails to show that the property was taken without his consent.

That the owner of stolen property may recover it after it is stolen, or may be paid for same, and then on the trial testify that while the accused did not have his consent to take it when taken,—yet it would have been all right for the accused to have taken his property provided he had told him later, or later paid him for it,—in an evident effort to favor the accused, —does not remove a taking under the circumstances shown in this case from being theft. Without any dispute in the testimony, the evidence in this case shows that a load of cotton seed was taken from Lueders without Douthit's knowledge, and that it was taken to Hamlin, miles away in the nighttime, and there sold by this appellant early the next morning, appellant and his companion both giving fictitious names, which fact was accompanied by further falsehood as to where they lived, and it is further shown that the accused endorsed on the check given him for the cotton seed the fictitious name given by him in the sale of same, and that he presents this check for payment as the payee therein named, and when it is further shown that upon learning of this situation Douthit came to Hamlin and collected from the purchaser of the cotton seed the amount of the check, and takes it back home with him and puts it in the bank. We can not agree that such facts

bring this case within the rules laid down by any of the authorities cited in appellant's motion. In Hunt v. State, 231 S. W., 775, it is made to appear that at no time while the alleged owner of the property was on the witness stand was he asked in regard to his want of consent, and this court says: "Where the owner of the alleged stolen property is present and testifies before the jury, and fails to give direct and positive testimony as to his want of consent to the taking of the property, such want of consent will not be inferred from other circumstances in evidence."

Caddell v. State, 49 Texas Crim. Rep., 133, is also cited, and presents a case in which the owner was not asked in regard to his want of consent, and this court makes substantially the same statement as in the Hunt case above.

Flagg v. State, 51 Texas Crim. Rep., 602, is also cited, but is not on the point. In that case the owner testified positively that he was in the habit of letting Flagg have his mule to work. Flagg seems to have taken it off and sold it. On the trial for theft the accused wanted the jury told that if he did not have the fraudulent intent to appropriate the mule when it came lawfully in his possession, he could not be convicted of its theft. The case was reversed for the failure of the trial court to give such instruction.

There was no failure in this case to ask Mr. Douthit whether he gave his consent to the taking of these seed, and he positively said he did not give appellant his consent to haul off this load of seed and sell it at Hamlin. The record shows that something like two years prior to the date of this alleged theft, and at other times prior thereto, appellant had worked for Douthit, and it is apparent that Douthit was inclined to favor appellant all that he could under the circumstances. He testified that if appellant had taken his property, and had come to him later and told him about it, it would have been all right. We have no such state of facts here even if under the law such a proposition could avail one charged with theft of property of an owner who has never given his consent to the taking of the property.

Appellant did not take Douthit's property under any claim that he believed he had permission to do so, nor did he come voluntarily later to Douthit and inform him that he had taken it. The facts are far removed. Appellant and his companion took a load of cotton seed from Douthit's possession in Lueders, in the nighttime, and later in said night drove the car of seed to Hamlin, where they were waiting before seven o'clock the

next morning to sell same. They both gave fictitious names, appellant saying his name was Simpson, and that he lived in Aspermont in Stonewall County, which was untrue. Appellant sold the seed evidently as his own and took from the purchaser a check payable to Simpson. He then endorsed the check in the name of Simpson and presented it to the bank for payment, and when payment was refused he tried to get parties to identify him. He was then arrested by the Hamlin authorities, and in this predicament he did telephone to Mr. Douthit, who came to Hamlin, went to the parties who had bought the seed and collected from them the price for which same were sold, and put it in his pocket. He did not inform the purchasers of the seed that it was all right with him for appellant to take his seed under the circumstances, and that he would look to appellant later for payment thereof.

It appears to us, as it must have appeared to the jury, perfectly plain that appellant fraudulently took from Douthit's possession the cotton seed in question with intent to appropriate them to his own use and benefit, and without Douthit's consent, and that only when confronted with certainty of prosecution and conviction for the theft, and apparently as the best way out of it, appellant called up Douthit and evidently threw himself on the tender mercies of Douthit, who seems to have tried to respond. We regret that we are not able to agree to any of appellant's contentions.

The motion for rehearing is overruled.

*Overruled.*